UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT GORDON, Receiver
of Legisi Marketing Inc., et al.,

       Plaintiff,                Case No. 11-13506
                                         HON. GEORGE CARAM STEEH

vs.

LARRY A. DEMEY,

       Defendant.
_____/

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DOC. #13)

Before the court is the motion of Robert Gordon, receiver for the estates of Legisi Marketing, Inc., et al., for summary judgment on his claims against defendant Larry Demey. Because the court finds no issue of genuine material fact concerning Gordon's entitlement to judgment, the motion is granted as set forth below.[1]

Gordon is the receiver for the estates of Gregory McKnight and two Legisi entities in an enforcement action brought by the Securities and Exchange Commission, SEC v. McKnight, et al., No. 08-11887. In that action, McKnight is alleged to have formed the Legisi entities to support a Ponzi scheme through which dozens of investors lost millions of dollars.

---

[1] The court hereby orders that the motion is submitted on the briefs, without oral argument, in accordance with E.D. Mich. LR 7.1(e)(2).

This is one of a number of cases related to the McKnight case in which Gordon seeks to recover funds of the McKnight and Legisi estates from individual Legisi investors who received distributions or transfers from Legisi in amounts exceeding their actual investments.  As it relates to Mr. Demey, Gordon alleges that during the years 2006 and 2007, Mr. Demey deposited a total of $163,689.18 with the Legisi entities, and in 2007 received distributions from Legisi in the amount of $242,750.38.  Gordon alleges this resulted in a net gain of $79,061.20 for Mr. Demey, and in his complaint seeks its return for redistribution to Legisi "victims" under theories of fraudulent transfer and unjust enrichment.  Gordon asserts this is appropriate for the reason that the Legisi Ponzi scheme could have had no legitimate profits to pay to its investors.

The first count in Gordon's complaint is brought under the "constructive fraud" provision of the Michigan Uniform Fraudulent Transfer Act (UFTA), § 35(1) .  That provision states that

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value at that time or the debtor became insolvent as a result of the transfer or obligation.

Mich. Comp. Laws Ann. § 566.35(1).  Gordon asserts that he is entitled to judgment under this provision, stating that the Legisi Ponzi scheme was, "as a matter of law" insolvent from the beginning.  Gordon cites Warfield v. Byron, 436 F.3d 551, 558 (5th Cir. 2006), for this proposition, which is not disputed by Mr. Demey.  Gordon also contends that Mr. Demey did not provide "reasonably equivalent value" for the amount of his withdrawals in excess of his deposits.  In his pro se response, Mr. Demey does not dispute the amount of the "net gain" he is alleged to have received as a result of his transfers to the Legisi program.

Rather, he simply points to certain stocks and other investments, such as Ford and Apple, which have experienced remarkable growth over short periods of time, apparently to bolster an argument that his investment in the Legisi program was without knowledge of its insolvency and/or fraudulent circumstances.

Gordon similarly asserts that he is entitled to judgment under § 34(1) of Michigan's UFTA, or its "actual fraud" provision. That section of the statute states that:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following:
>
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.

Mich. Comp. Laws § 566.34(1). Gordon points to Conroy v. Shott, 363 F.2d 90 (6th Cir. 1966), among other case law, for the proposition that transfers made by Ponzi schemes are deemed to be effected with the "actual intent to hinder, delay or defraud" creditors. Id. at 92.

The court finds that plaintiff is entitled to summary judgment on both claims. This court has found on more than one occasion that Legisi was a Ponzi scheme. See, e.g., SEC v. Gagnon, No. 10-CV-11891, Doc. # 66; Gordon v. Mazu Publishing, No. 09-13953. Accordingly, the transfers were made by an insolvent entity, and as discussed in the Conroy case cited above, this means the transfer was made with the intent required under the "actual fraud" provision of the UFTA. See also In re AFI Holding, Inc., 525 F.3d 700, 704 (9th Cir. 2008). Moreover, there was no reasonably equivalent value given for Mr. Demey's gains, as would be necessary for a successful defense in either case. See Mich. Comp. Laws § 566.38(1) ("A transfer or obligation is not voidable under section 4(1)(a)

against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or oblige.") Similarly, Mich. Comp. Laws § 566.35 requires that the defendant did not provide reasonably equivalent value for his or her gains. See, e.g., Terry v. June, 432 F. Supp. 2d 635, 641 (W.D. Va. 2006).

As noted above, Mr. Demey does not dispute that he received $79,061.20 more from the Legisi scheme than he deposited. Regarding Mr. Demey's asserted ignorance of the scheme, as Gordon argues, this does not affect the court's decision. See Warfield, 436 F.3d at 558. In fact, Gordon states that he does not question Mr. Demey's good faith, and is accordingly seeking only Mr. Demey's "net gain," as opposed to both the gains *and* the principal. The court finds Mr. Demey's receipts in excess of deposits did not represent reasonably equivalent value under these circumstances.

As stated in the Terry case,

> Although the return of the Defendant's investment principal was offset by the Defendant's initial investment in Vavasseur, payments in excess of that amount were not offset by anything since Vavasseur had no source of money other than investor funds. The Defendant's capital investment in Vavasseur, therefore, does not constitute fair and adequate consideration for the fictitious profits he received from the scheme.

Terry, 432 F. Supp. 2d at 643. While the notion that a person acting in good faith, making an investment he or she considered to be safe, would have to disgorge profits months or even years later may appear to be harsh, this result takes the victims of the scheme into consideration as well. The recent case of Calvert v. Radford, et al., 2013 WL 366223 (Bkrtcy. W.D. Wash.), addressed this very issue in relation to an investor's argument concerning whether interest rates in a Ponzi scheme could constitute "reasonably equivalent value:"

> We are aware that it may create a significant hardship when an innocent investor such as Kowell is informed that he must disgorge profits he earned innocently, often years after the money has been received and spent. Nevertheless, courts have long held that is [sic] more equitable to attempt to distribute all recoverable assets among the defrauded investors who did not recover their initial investments rather than to allow the losses to rest where they fell.

Id. at *8 (quoting Donell v. Kowell, 533 F.3d 762, 776 (9th Cir. 2008) (internal citation omitted)).  This case is no different.

Because the court finds that reasonably equivalent value was not given by Mr. Demey for the "profits" he received through investments in the Legisi scheme, Gordon's motion for summary judgment is hereby GRANTED.  Judgment will enter against Mr. Demey in the amount of $79,061.20.

**IT IS SO ORDERED**.

Dated:  February 19, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 19, 2013, by electronic and/or ordinary mail and also on Larry A. Demey, 11900 Berry Road, Blissfield, MI 49228.

s/Barbara Radke
Deputy Clerk